O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SERGIO C. ORTEGA, | Case No. CV 16-00291-DFM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Sergio C. Ortega ("Plaintiff") appeals the Commissioner's final decision denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed applications for DIB and SSI on October 21, 2011, alleging disability beginning on December 31, 2009. See Administrative Record ("AR") 221-24, 225-30. His applications were denied at both the initial and reconsideration levels. See AR 145-49, 150-54, 155-61. Plaintiff then requested and received a hearing before an administrative law judge ("ALJ"), during which the ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel. See AR 51. In March 2014, the ALJ issued an unfavorable decision. See AR 21-48.

The ALJ determined that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease with bilateral radiculopathy (left greater than right), obesity, depressive disorder secondary to medical condition, cognitive disorder (status post traumatic brain injury in 1996), and a history of seizure disorder (status post motor vehicle accident in 1996). See AR 30. However, he found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. See AR 31. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with some additional limitations, including a limitation to standing and walking for up to four hours in an eight-hour workday with normal breaks. See AR 33.

The ALJ found that Plaintiff's RFC would not enable him to perform any of his past relevant work. See AR 40. However, based on the VE's testimony, the ALJ concluded that Plaintiff could perform the requirements of occupations such as garment sorter, laundry worker, and merchandise marker. See AR 42. The ALJ also noted that even if Plaintiff's RFC were further restrained such that Plaintiff could stand and walk for only two hours in an eight-hour workday with normal breaks, provided that standing and walking

did not exceed 20 minutes at a time and he could use a handheld assistive device for prolonged ambulation, he could still perform the requirements of occupations such as table worker, assembler, or stuffer. See AR 42. The ALJ therefore concluded that Plaintiff was not disabled from December 31, 2009, through the date of his decision. See AR 42-43.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 18-20. Plaintiff then sought review in this Court. See Dkt. 1.

## II.
## DISCUSSION

Plaintiff argues that the ALJ improperly discounted the opinion of his treating physician and improperly discounted Plaintiff's symptom testimony. See Joint Stipulation ("JS") at 5.

**A.** **The Treating Physician's Opinion**

**1.** **Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).[2]

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect at the time of the ALJ's March 2014 decision.

A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. See Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

**2. Relevant Facts**

  a. Treating Physician Dr. Muhammed Memon

Dr. Memon saw Plaintiff six times between January 2010 and January 2013. On January 30, 2010, and November 24, 2010, Dr. Memon referred Plaintiff to a neurologist for an EEG and MRI and refilled pain medication. See AR 427, 432. On October 28, 2011, Plaintiff visited Dr. Memon but the notes from that visit are unreadable. See AR 426. On January 3, 2012, Plaintiff saw Dr. Memon to treat a toenail infection and left leg and lower back pain. See AR 405. Dr. Memon noted decreased sensation in Plaintiff's left leg and assessed him with lumbar radiculopathy. See id. He refilled Plaintiff's medication, ordered further testing, and noted that Plaintiff did not want

4

surgery. See id. Dr. Memon did the same on January 25, 2013, and also noted that Plaintiff had received two epidural injections to treat the pain stemming from his radiculopathy but that they had not helped. See AR 509-10.

On April 9, 2012, Plaintiff saw Dr. Memon to request a referral to a neurologist because he was applying for disability benefits. See AR 411. Dr. Memon completed a residual functional capacity form diagnosing Plaintiff with lumbar radiculopathy and noting that Plaintiff had received an MRI, EMG, and nerve conduction study. See AR 435. He opined that Plaintiff could sit and stand for 20 minutes and walk for 10 to 15 minutes; could not sit or stand upright for 6 to 8 hours; could reach above his shoulders frequently; can reach down to waist level and towards the floor rarely; could frequently handle objects with his fingers; could lift and carry 5 to 10 pounds; and would have difficulty bending, squatting, kneeling, and turning parts of his body. See AR 435-40.

The ALJ gave "little weight" to Dr. Memon's opinion because it was conclusory and provided little explanation of the evidence on which he relied in forming that opinion. AR 39.

                b.        Examining Physician Dr. Mehran Sourehnissani and Non-Examining State-Agency Consultants

Dr. Sourehnissani examined Plaintiff on January 6, 2012. See AR 352. He recorded Plaintiff's history of seizures and back pain following a motor vehicle accident several years earlier. See AR 353. Dr. Sourehnissani noted tenderness and muscle spasm near the spine, a somewhat limited range of spinal motion, and negative straight-leg raising. See AR 355. He also noted that Plaintiff had some difficulty changing positions due to back pain. See AR 356. Plaintiff had a stiff and slow gait but did not require his cane to walk across the room. See id. Dr. Sourehnissani examined x-rays of the lumbrosacral spine, which revealed "minimal discogenic disease at L4 through

S1" and "associated spurring of the vertebrae." Id. Based on the physical examination, Dr. Sourehnissani opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours; sit for 6 hours cumulatively; and climb, stoop, kneel, and crouch occasionally. See AR 357.

The non-examining state-agency consultants reviewed the record and found severe disorder of the back, as well as non-severe epilepsy, mental disorders, affective disorders, and substance addiction disorders. See AR 92. They found that insufficient evidence supported Plaintiff's allegations from the alleged onset date through January 6, 2012. See AR 91, 94. They recommended a medium RFC because the seizures did not require an emergency room visit, Plaintiff's spinal sensation was intact, Plaintiff did not require a cane to walk, and examination results were largely unremarkable. See AR 91. The examiners opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone based on the "location, duration, frequency and intensity of the individual's pain and other symptoms." AR 93. After January 6, 2012, the examiners determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours of an 8-hour workday; push and pull with no limitations; and climb, balance, stoop, kneel, crouch, and crawl occasionally. See AR 94-96, 106-08.

The ALJ gave significant weight to the opinions of Dr. Sourehnissani and the state-agency consultants. See AR 38. He noted that they were generally consistent in assessing Plaintiff as capable of performing light work with some differences in the degree of specific function-by-function limitations. The ALJ adopted specific restrictions on a function-by-function basis rather than completely adopting any individual assessment. See id. The ALJ also

considered Plaintiff's history of seizures, Plaintiff's allegations of back pain, and diagnostic findings confirming that Plaintiff has degenerative disc disease at the lumbar spine with radiculopathy. See id.

### 3. Analysis

Plaintiff argues that the ALJ should have given greater weight to his treating physician because Dr. Memon's opinion was consistent with Plaintiff's physical limitations and testimony. See JS at 6. The Court finds that the ALJ gave several specific and legitimate reasons for discounting Dr. Memon's contradicted opinion.

First, as the ALJ noted, Dr. Memon's opinion was conclusory and provided little explanation of the supporting evidence. See AR 39. Dr. Memon's functional assessment consisted largely of checking boxes and giving a short response to each question. See AR 435-40. Similarly, his treatment notes from Plaintiff's six visits gave short responses and often repeated entries from earlier visits. Dr. Memon's treatment notes do not support or explain his finding that Plaintiff was so debilitated by his pain that he could stand or sit for only 20 minutes, walk for 10-15 minutes, and rarely reach down to the waist or floor. See Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." (citations omitted)).

Second, Dr. Memon did not document objective findings supporting the functional assessment. See AR 39. As Plaintiff admits, the residual functional capacity form completed by Dr. Memon did not reference Plaintiff's medical record. See JS at 9. Dr. Memon gave no response to the question "is there an

objective medical reason for the pain?" AR 438. While he claimed that his opinion was based on MRI, EMG, and nerve conduction study findings, see AR 435, those tests showed generally mild abnormalities in the spine. Plaintiff acknowledges that his "MRI in 2011 revealed relatively mild results." JS at 17. But by 2013, Plaintiff contends, the MRI results included some "mild to moderate" disc protrusions. See JS at 18, AR 546-49. However, the MRI results were still very mild, and much of the spine was "essentially unchanged" from previous MRI results. See AR 546. And while Plaintiff notes that his disc degeneration was described as "severe," see JS at 18, it appears that this language is taken out of context, see AR 547 ("mild height loss at L5, likely degenerative in nature with stable severe disc space narrowing at L5-S1"). Nearly all MRI findings from 2013 were described as normal or unremarkable. To the extent that the MRIs showed moderate lumbar spine abnormalities, the ALJ accounted for such differences when assigning limitations in his residual functional capacity.

Third, Dr. Memon's limitations appear to be based largely on Plaintiff's subjective complaints rather than based on objective findings. See AR 39. Plaintiff argues that nothing in the record suggests that Dr. Memon did not believe Plaintiff's symptom testimony. See JS at 9. However, as discussed below, the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's testimony. As the ALJ did not fully credit Plaintiff's symptom testimony, he did not need to rely on Dr. Memon's recitation of Plaintiff's symptom testimony. Accordingly, the Court finds that the ALJ offered specific and legitimate reasons supported by substantial evidence in the record for refusing to give Dr. Memon's findings controlling weight. See Lester, 81 F.3d at 830-31.

Finally, Plaintiff argues that if the ALJ found Dr. Memon's opinion inadequate, incomplete, or unsupported by the record, he should have

8

contacted Dr. Memon to obtain a complete record. See JS at 9. The "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (as amended) (citation omitted); accord Tonapetyan, 242 F.3d at 1150. Here, the ALJ gave little weight to Dr. Memon partially because he failed to document objective findings to support his functional assessment. See AR 39. However, he still based his decision on a review of the thorough medical records supplied. The treatment history was not ambiguous or inadequate. It simply did not support the broad limitations assessed by Dr. Memon. The ALJ thus did not err in failing to further develop the record by contacting Dr. Memon.

**B.     Discounting Plaintiff's Testimony**

**1.     Applicable Law**

In order to determine whether a plaintiff's testimony about subjective symptoms is credible, an ALJ must engage in a specific two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or other symptoms. See Lingenfelter, 504 F.3d at 1036.

If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness,

inconsistencies either in his testimony or between his testimony and his conduct, unexplained or inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d at 1283-84, 1284 n.8 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

### 2. Analysis

The ALJ gave specific, clear and convincing reasons for finding that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not fully credible. First, the ALJ found that Plaintiff's ability to clean his home, prepare food for his children, perform some household chores, walk for exercise, and use public transportation undermined the credibility of his allegations of disabling functional limitations. See AR 34-35. At his hearing, Plaintiff explained that during the day, he cleans the house and prepares food for his children. See AR 68. Plaintiff explained that while he cooks for his family, it often takes him several hours because he has to take breaks to sit down. See AR 70. He testified that his son helped him put on his socks and carry heavy laundry baskets, but that he could generally do chores by himself. See AR 69, 71-72. Plaintiff also uses public transportation and exercises every day by walking around the block for about 20 minutes. See AR 69. While "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)), the extent of Plaintiff's activities support the ALJ's finding that the reported severity of his impairments was not fully credible. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ may weigh

inconsistencies between claimant's testimony and daily activities). Plaintiff's ability to conduct most chores with minimal assistance and exercise through walking do not support his claims of disabling levels of pain. Instead, "[t]hese activities tend to suggest that [Plaintiff] may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008).

Second, the ALJ opined that the "allegations of debilitating and limiting physical and mental symptoms are inconsistent with the objective medical evidence, which indicates an attempt by [Plaintiff] to exaggerate the severity of his symptoms." AR 34. The ALJ noted that the medical records reveal that medications have been relatively effective in controlling Plaintiff's symptoms—particularly for his seizures. See AR 35. The ALJ also noted that despite alleging problems with depression, Plaintiff did not take any psychotropic medication and had not received any psychiatric treatment. See AR 35. Plaintiff now argues that his failure to seek mental health treatment could have been symptomatic of the severity of his mental impairments. See JS at 23. However, nothing in the record supports this proposition. Plaintiff appears to have been open about his history of depression with many treating physicians and appears to have at one point taken antidepressants. For example, in November 2011, Dr. Karen Chang noted that Plaintiff had a history of depression, had stopped taking antidepressants due to insomnia, and said that he was no longer depressed. See AR 532-33. In December 2011, Dr. Marony also noted that Plaintiff was no longer depressed and had stopped taking antidepressants due to insomnia. See AR 526. In December 2013, Dr. Heilig-Adams noted that Plaintiff's medical history included depression but described Plaintiff as currently alert and oriented to place and time. See AR 515. Dr. Hijazin treated Plaintiff in April 2013 and noted that Plaintiff had no anxiety, depression, sleep disturbance, irritability, mood swings, or suicidal thoughts.

See AR 481. Although treatment records sometimes recorded Plaintiff's history of depression, it appears that neither Plaintiff nor his treating physicians believed that any current depression symptoms existed. Plaintiff's failure to seek treatment for his depression indicates that his symptoms were not as disabling as those alleged and could likely be resolved with therapy or medication if they were to reappear. The ALJ thus validly relied on Plaintiff's "unexplained, or inadequately explained, failure to seek treatment" in rejecting claimant's credibility. Fair, 885 F.2d at 603.

The ALJ also noted that the objective medical record suggested that Plaintiff's seizures were controlled by Dilantin and were thus not as limiting as alleged. See AR 35. Although Plaintiff claimed that he was disabled by his seizures, he also admitted that "Dilantin controls any seizures I might have had if I didn't take it." AR 261. Similarly, he testified that while his last seizure was in 2008, it occurred "because [he] didn't take the medication." AR 79. The ALJ validly inferred that Plaintiff's "response to conservative treatment undermines [his] reports." Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

Third, the ALJ noted that despite Plaintiff's alleged difficulty with focus and memory, Plaintiff did not appear to have difficulty concentrating during the hearing; instead, he was able to respond to questions appropriately and without delay and pay attention throughout the hearing. See AR 35. At the hour-long hearing, the transcript shows that Plaintiff could—and did—give thorough, responsive answers to the ALJ's questions. See AR 51-85. Nothing suggests that Plaintiff was distracted or had difficulty engaging at any point during the hearing. The ALJ properly found that Plaintiff's demeanor at the hearing did not support the alleged severity of his limitations. Especially when considered alongside the other valid reasons for partially discrediting Plaintiff's symptom testimony, the ALJ could rely on Plaintiff's lack of apparent

12

limitations at the hearing. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (noting that ALJ's "observations of a claimant's functioning" at the hearing are permissible as part of the overall credibility assessment).

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. See Smolen, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959 (9th Cir. 2002); Fair, 885 F.2d at 604. As Plaintiff's activities of daily living, limited treatment history, and behavior at the hearing affected Plaintiff's credibility, they constitute specific, clear and convincing reasons for discounting Plaintiff's testimony regarding his symptoms and functionality. Reversal is therefore not warranted on this basis.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: April 17, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge